## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SHERRY LEE FOUX,

      Plaintiff,

      v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

      Defendant.

CIVIL ACTION NO. 3:22-cv-01144

(SAPORITO, M.J.)

## MEMORANDUM

In this matter, the plaintiff, Sherry Lee Foux, seeks judicial review of the final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income, pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). The matter has been referred to the undersigned United States magistrate judge on consent of the parties, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

### I.  BACKGROUND

On September 23, 2013, Foux protectively filed an application for disability insurance benefits, and on September 30, 2013, she filed an application for supplemental insurance benefits, with both applications

asserting a disability onset date of May 3, 2012.[1] Her claims were initially denied by state agency reviewers on November 25, 2013. The plaintiff then requested an administrative hearing.

A hearing was subsequently held on April 30, 2015, before an administrative law judge ("ALJ"), Gerald W. Langan. In addition to the plaintiff herself, ALJ Langan received testimony from an impartial vocational expert, Josephine Doherty. The plaintiff was not represented by counsel at this hearing.

On July 2, 2015, ALJ Langan denied Foux's application for benefits in a written decision. (Tr. 16–24; Tr. 938–46.) The plaintiff sought further administrative review of her claims by the Appeals Council, but her request was denied on June 14, 2017. (Tr. 1–3; Tr. 954–56.) Foux then timely filed a complaint for judicial review in this court on August 17, 2017. (Tr. 959–64.)[2]

---

[1] The record reflects that Foux had submitted a previous application for benefits in October 2010, which was denied by a different ALJ on May 2, 2012. (Tr. 70–79.) Foux requested further administrative review of that claim by the Appeals Council, but her request was denied on August 15, 2013. (Tr. 84–86.) Thus, the alleged onset date for this application is May 3, 2012—the first day following the ALJ's decision in that prior case.

[2] Complaint, *Foux v. Berryhill*, Civil Action No. 3:17-cv-01476 (M.D. Pa. Aug. 17, 2017).

On May 24, 2021, the court granted an unopposed motion by the Commissioner to remand the case for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g), and final judgment was entered in that prior action for judicial review. (Tr. 965.)[3]

On September 7, 2021, the Appeals Council entered an order vacating ALJ Langan's July 2015 decision and remanding the matter to a different ALJ for further proceedings. (Tr. 971–73.)

A telephonic post-remand hearing was held on December 20, 2021, before a second ALJ, Frank Barletta. In addition to the plaintiff herself, ALJ Barletta received testimony from an impartial vocational expert, Linda Dezack. The plaintiff was represented by counsel at this second hearing.

On March 29, 2022, ALJ Barletta denied Foux's application for benefits in a written decision. (Tr. 873-86.) ALJ Barletta followed the familiar five-step sequential evaluation process in determining that Foux was not disabled under the Act. *See generally Myers v. Berryhill*, 373 F. Supp. 3d 528, 534 (M.D. Pa. 2019) (describing the five-step sequential

---

[3] Judgment Order, *Foux v. Saul*, No. 3:17-CV-01476 (M.D. Pa. May 24, 2021).

evaluation process).

At step one, ALJ Barletta found that Foux had not engaged in substantial gainful activity since her alleged onset date.

At step two, ALJ Barletta found that, since the alleged onset date, Foux had the severe impairments of: degenerative disc and joint disease status-post anterior cervical discectomy and fusion; cervical radiculopathy; status-post left carpal tunnel release; status-post left ulnar decompression; chronic obstructive pulmonary disease (COPD); rheumatoid arthritis; Crohn's disease; fibromyalgia; left sacroiliitis; and primary osteoarthritis involving multiple joints. The ALJ further found that, beginning with a hospital admission on December 27, 2017, Foux also had additional severe mental impairments: bipolar I disorder; and post-traumatic stress disorder.

At step three, ALJ Barletta found that Foux did not have an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (eff. Apr. 2, 2021).[4] In doing so, the ALJ considered Foux's

---

[4] We note that the agency's list of musculoskeletal disorders was extensively revised effective April 2, 2021, less than a year before the
*(continued on next page)*

limitations in four broad functional areas as a result of her mental disorders, finding no more than moderate limitations in any of the four functional areas.[5] *See generally* 20 C.F.R. §§ 404.1520a(c), 416.920a(c) (explaining functional limitation rating process for mental impairments); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(E) (explaining the four areas of mental functioning); *id.* § 12.00(F) (explaining process for using paragraph B criteria to evaluate mental impairments). In connection with listings 12.04 and 12.15, the ALJ also considered whether Samuel's mental disorders were "serious and persistent," finding that her impairments had not required medical treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminished the symptoms and signs of her mental disorders, nor that she had achieved only marginal adjustment as a result. *See*

---

plaintiff's application for disability and disability benefits was adjudicated by the agency. *See generally* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164 (Dec. 3, 2020) (to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1).

[5] These four areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. The ALJ found Foux to be mildly limited in the first category (understanding, remembering, or applying information), and moderately limited in the other three categories.

*generally id.* § 12.00(G) (explaining process for using alternative paragraph C criteria to evaluate certain mental impairments).

Between steps three and four of the sequential-evaluation process, ALJ Barletta assessed Foux's residual functional capacity ("RFC"). *See generally Myers*, 373 F. Supp. 3d at 534 n.4 (defining RFC). After evaluating the relevant evidence of record, ALJ Barletta found that Foux had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[6] with the following limitations:

> The claimant is limited to occasional climbing on ramps, stairs, ladders, ropes, and scaffolds. The claimant is limited to frequent balancing and stooping. The claimant is limited to occasional kneeling, crouching, and crawling. The claimant must avoid concentrated exposure to vibration, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants. The claimant must avoid all exposure to hazards. The claimant is limited to occasional use of the bilateral upper extremities for overhead reaching and lifting. The claimant is limited to occasional use of the left upper extremity for gross manipulation. The claimant must be afforded a sit/stand option with alternating between

---

[6] The Social Security regulations define "sedentary work" as a job that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a). The regulations further comment that: "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met." *Id.*

sitting and standing every 30 minutes. Beginning on December 27, 2017, the claimant has the following additional limitations: The claimant would be limited to unskilled work, involving only simple, routine tasks that are not performed in a fast-paced production environment. The claimant would be limited to occupations with only occasional, simple decision-making and occasional changes in work duties or work setting. The claimant can tolerate only occasional interaction with supervisors, co-workers, and the public.

(Tr. 879–80 (citation omitted).)

In making these factual findings regarding Foux's RFC, ALJ Barletta considered her symptoms and the extent to which they could reasonably be accepted as consistent with the objective medical evidence and other evidence of record. *See generally* 20 C.F.R. §§ 404.1529; 416.929, Soc. Sec. Ruling 16-3p, 2017 WL 5180304 (revised Oct. 25, 2017). ALJ Barletta also considered and articulated how he weighed the various medical opinions in the record. *See generally* 20 C.F.R. §§ 404.1527, 416.927; Soc. Sec. Ruling 96-2p, 1996 WL 374188.

At step four, based on this RFC and on testimony by the vocational expert, ALJ Barletta concluded that, through her date last insured, Foux was unable to perform her past relevant work as a medical housekeeper/cleaner or as a spot welder, as actually or generally performed.

At step five, ALJ Barletta concluded that, as of her fiftieth birthday on May 27, 2017, Foux's age category changed, and based on her age, education, work experience, and RFC, Rule 201.09 of the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2, dictated a finding of "disabled." But for the period prior to that date, ALJ Barletta concluded that Foux was capable of performing work that exists in significant numbers in the national economy. Based on her age, education, work experience, and RFC, and based on testimony by the vocational expert, ALJ Barletta concluded that Foux was capable of performing the requirements of representative occupations such as: call-out operator (DOT # 237.367.014); counter clerk (DOT # 249.366-010); or surveillance system monitor (DOT # 379.367-010). Based on this finding, the ALJ concluded that Foux was not disabled for Social Security purposes for the period prior to May 27, 2017.

The plaintiff did not seek further administrative review of her claims by the Appeals Council, making ALJ Barletta's March 2022 decision the final decision of the Commissioner subject to judicial review by this court.

Foux timely filed her complaint in this court on July 24, 2022. The

Commissioner has filed an answer to the complaint, together with a certified copy of the administrative record. Both parties have filed their briefs, and this matter is now ripe for decision.

## II.   DISCUSSION

Under the Social Security Act, the question before this court is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See generally* 42 U.S.C. § 405(g)(sentence five); *id.* § 1383(c)(3); *Myers*, 373 F. Supp. 3d at 533 (describing standard of judicial review for social security disability insurance benefits and supplemental security income administrative decisions).

Foux asserts on appeal that the ALJ's decision is not supported by substantial evidence because: (1) ALJ Barletta failed to properly evaluate a medical opinion by a treating physician, Vinit Pande, M.D.; and (2) ALJ Barletta failed to include all of Foux's claimed limitations or impairments in the hypothetical posed to a vocational expert at the most recent administrative hearing.

Finding the first issue dispositive of this appeal and remanding the

case to the agency to properly address the ALJ's duty to fully develop the record with respect to his evaluation of the medical opinion of Foux's treating physician, Dr. Pande, we do not reach the second issue. "A remand may produce different results on plaintiff's application, making discussion of the remaining claims moot." *Upshur v. Colvin*, 200 F. Supp. 3d 503, 513 n.3 (E.D. Pa. 2016).

The plaintiff contends that the ALJ erred in his evaluation of the opinion of her treating physician, Dr. Pande. (*See generally* Tr. 560–66.) For applications filed "[p]rior to March 2017, ALJs were required to follow regulations which defined medical opinions narrowly and created a hierarchy of medical source opinions with treating sources at the apex of this hierarchy." *Mercado v. Kijakazi*, 629 F. Supp. 3d 260, 280 (M.D. Pa. 2022). As another federal district court has summarized:

> Treating physicians and psychologists top the hierarchy. Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once. Non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions. The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual claimant become weaker.

*Marks v. Colvin*, 201 F. Supp. 3d 870, 880 (S.D. Ohio 2016) (cleaned up).

*See generally* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Under the applicable regulations, the "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202 (3d Cir. 2008). To be a "medical opinion" entitled to "controlling weight" an opinion must come from a "treating source," it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it must be "not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(a)(2), (c)(2), 416.927(a)(2), (c)(2); Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *2.[7] Under the Social Security regulations applicable to this case, a "treating source" was defined as an "acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *see also id.* §§ 404.1502(a), 416.902(a) (defining

---

[7] We note that the treating physician rule applicable in this case was subsequently eliminated by an amendment to the rules effective March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). By the terms of that amendment, however, the treating physician rule continues to apply to applications filed before that date, such as in this case.

"[a]cceptable medical source" to include a "[l]icensed physician (medical

or osteopathic doctor)"). As to what constitutes an "ongoing treatment

relationship," the regulation states:

> Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s). We may consider an acceptable medical source who has treated or evaluated you only a few times or only after long intervals (e.g., twice a year) to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).

*Id.* §§ 404.1527(a)(2), 416.927(a)(2).

If not well-supported by medically acceptable clinical and

diagnostic techniques or inconsistent with other substantial evidence in

the case record, a treating source medical opinion is nevertheless

generally entitled to deference. Soc. Sec. Ruling 96-2p, 1996 WL 374188,

at *4. Ordinarily, it will be afforded "great weight." *See id.* at *2; *Morales*

*v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). *See generally* 20 C.F.R.

§§ 404.1527(c), 416.927(c), (detailing factors considered in evaluating

weight given to a medical opinion).

Here, the ALJ did not consider whether Dr. Pande's treating

physician opinion was entitled to controlling weight. Indeed, the ALJ expressly stated that he "will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources."[8] (Tr. 882.) The ALJ then went on to find Dr. Pande's opinion to be entitled to "significant weight." (Tr. 882–83.) The ALJ specifically found that Dr. Pande's opinion was supported by "positive clinical findings" and certain parts of it were "consistent with and supported by the claimant's extensive treatment history," while other parts were "not completely supported, as the claimant's treatment would be expected to be even more aggressive." (*Id.*) Moreover, the only other medical opinions considered by the ALJ were the opinions of a consultative examining physician and a non-examining state agency medical consultant, both of which the ALJ afforded "little weight" because they were "not supported by or consistent with  the medical evidence of record and limitations in the claimant's activities of daily living." (Tr. 883.)

Under similar circumstances, other courts have held—and we

---

[8] We note that this would be a correct statement of the standard for evaluating medical opinions applicable to claims filed on or after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

agree—that "the ALJ's failure to consider whether the treating physician['s] findings and opinions were entitled to controlling weight generally requires a remand of the case for a proper analysis of this issue." *Salazar v. Astrue*, 788 F. Supp. 2d 1231, 1235 (D. Colo. 2011); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376–77 (6th Cir. 2013) (noting that, although the ALJ discussed the several factors set forth in § 404.1527(c), "these factors are properly applied only *after* the ALJ has determined that a treating-source opinion will not be given controlling weight") (emphasis added); *Cordero v. Kijakazi*, 597 F. Supp. 3d 776, 791 (E.D. Pa. 2022) ("[P]ursuant to Social Security Regulations, the ALJ must assign controlling weight to any well-supported treating source medical opinion unless the ALJ identifies substantial inconsistent evidence."); *Bowermaster v. Comm'r of Soc. Sec.*, 395 F. Supp. 3d 955, 961 (S.D. Ohio 2019) (finding ALJ's omission of controlling-weight analysis was reversible error); *Marks*, 201 F. Supp. At 882 ("The ALJ's failure to conduct a controlling weight analysis . . . deprives the Court of the opportunity to meaningfully review whether he undertook the 'two-step inquiry' required when analyzing treating source opinions.")

The ALJ in this case failed to consider or articulate whether the

medical opinion of the plaintiff's treating physician was entitled to controlling weight. Moreover, the ALJ's express findings in support of his determination that the treating physician's opinion was entitled to only "significant weight" provide no support whatsoever for even an implicit finding that the opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques or was inconsistent with other substantial evidence in the case record.

Under the circumstances presented, we are unable to conclude that the ALJ's evaluation of the appropriate evidentiary weight to afford the medical opinion of the plaintiff's treating physician, Dr. Pande, is supported by substantial evidence or otherwise based upon a correct application of relevant law.

## III.  CONCLUSION

Based on the foregoing, we conclude that the Commissioner's finding that Foux was not disabled is not supported by substantial evidence and was not reached based upon a correct application of the relevant law. Accordingly, the Commissioner's decision denying disability benefits will be vacated and the case will be remanded for further proceedings consistent with this opinion.

An appropriate order follows.

Dated: September 22, 2023         *s/Joseph F. Saporito, Jr.*
                                             JOSEPH F. SAPORITO, JR.
                                             United States Magistrate Judge